# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTRELL TEEN, # 461504, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-cv-568-JPG |
| ) | |
| R. SMITH, ) | |
| GERMAINE, ) | |
| ZANTE, ) | |
| KEMPT, ) | |
| MARY ROBINSON-DAVIS, ) | |
| SGT. SHUBERG, ) | |
| SGT. NICHOLS, ) | |
| SGT. COOK, ) | |
| SGT. BOUJACK, ) | |
| SGT. MASSE, ) | |
| JOHN DOE #1-3 (Supervisor), ) | |
| and ST. CLAIR COUNTY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is a pretrial detainee, confined at the St. Clair County Jail ("the Jail"). He has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff raises a number of claims in this action, including retaliation against him for having brought complaints and lawsuits against Jail staff, and deliberate indifference to his health and safety. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Additionally, the Court must consider whether all of Plaintiff's claims may appropriately proceed together in the same lawsuit. This initial review reveals that several of Plaintiff's claims are not properly joined in this action. These improperly joined claims shall therefore be severed into separate cases, where they shall undergo the required § 1915A evaluation.

1

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, one claim that shall remain in this action survives threshold

review under § 1915A.

## **The Complaint**

Beginning in January 2016, Plaintiff submitted a number of captain complaints, raising concerns about several problems in the Jail. In addition, Plaintiff has sued various Jail officials during his imprisonment, including the superintendent, nurses, and kitchen supervisor Robinson-Davis (who is also named as a Defendant herein). (Doc. 1, p. 4). As a result of these complaints and lawsuits, Plaintiff asserts that he has been the target of retaliatory actions by some Defendants.

Plaintiff submitted multiple complaints In January 2016 over blankets not being washed for months. He also lodged complaints about maggots in the food. (Doc. 1, p. 4). In March 2016, an unidentified official told Plaintiff to "bunk and junk," indicating that he would be released from custody. In response, Plaintiff gave away about $150.00 worth of personal property. Instead of being released, however, he was re-housed in a different wing of the Jail (J-Block), where he was unable to access the law library, was denied medical and dental treatment, and where he believed his safety was at risk from aggressive inmates. (Doc. 1, p. 5). John Doe #1 was the supervisor who transferred Plaintiff to J-Block. Plaintiff asserts that normally, inmates are re-housed for disciplinary reasons. In Plaintiff's case, however, there was no reason to move him other than to retaliate against him for making complaints, since he had no disciplinary or behavior problems at that time.

At a later date, Plaintiff was moved again, this time to H-Block. That wing was also unsafe as the individual cell doors did not lock, and fights broke out almost daily. While in H-Block, Plaintiff was repeatedly denied the privilege of ordering hot food trays. He would place a hot tray order and his account would be charged, but no tray would be delivered to him, while

other inmates received their hot trays without a problem. Plaintiff had to file complaints before his money was eventually refunded. Plaintiff claims that Robinson-Davis (kitchen supervisor) denied him the hot trays while charging him for trays not delivered, as retaliation for his complaints. (Doc. 1, p. 5).

H-Block was placed on a 30-day lockdown in November-December 2016 because of a fight, in which Plaintiff was not involved. (Doc. 1, p. 6). Plaintiff did not receive a hearing over this punishment, was denied access to the law library, and was not allowed to obtain hygiene items, envelopes, or cleaning supplies. He submitted daily complaints over these deprivations, and was finally moved to a different block before the lockdown ended. Supervisor John Doe #2 disregarded Plaintiff's complaints for weeks until Plaintiff was transferred to AB-Block.

On AB-Block, Plaintiff regained some access to the law library, and began to receive "legal mail." Sgt. Nichols and others improperly opened and read Plaintiff's legal mail before giving it to him. (Doc. 1, p. 6). As Jail staff realized Plaintiff was seeking redress in the courts, Plaintiff was frequently told that the law library was "down." On one occasion, Sgt. Cook told Plaintiff that the library was "down," but the next day, Plaintiff observed another inmate in the law library using the computer. *Id.* Plaintiff believes the opening of his mail and the denial of law library access were in retaliation for his attempts to bring his complaints in court.

Plaintiff ordered and was charged for commissary items that were not delivered. C/O Everett (who is not named as a Defendant) refused to reimburse Plaintiff's account, despite Plaintiff's complaints to Everett and his supervisor. (Doc. 1, p. 6). Other inmates' accounts have been quickly reimbursed for mistakes, but Plaintiff is still waiting for a refund dating back to November 2016.

In November 2017, C/O Carter (who is not a Defendant) delayed delivering Plaintiff's

4

legal mail to him for over 2 weeks. (Doc. 1, p. 7). C/O Jerry (also not a Defendant) delayed Plaintiff's outgoing mail in October 2017, relating to a case that was then pending in this Court (*Teen v. Peebles*, Case No. 17-cv-593). Plaintiff claims the delay caused his amended complaint to reach the Court too late to be considered, and the case was dismissed. Sgt. Masse was responsible for handling the mail, and Plaintiff alleges that the delays were retaliatory and aimed at preventing Plaintiff's civil complaints from succeeding. (Doc. 1, p. 7).

On November 7, 2017, while Plaintiff was on AB-Block, he was speaking with a nurse through a small window about his medical concerns. (Doc. 1, p. 10; Doc. 1-1, p. 21). Sgt. Masse slammed the window shut in Plaintiff's face, preventing Plaintiff from receiving help or information from the nurse. Plaintiff asserts that Masse's action was discriminatory and retaliatory.

On or about January 25, 2018, C/O Smith (who Plaintiff had sued in a 2017 civil action involving a boil order), targeted Plaintiff with a disciplinary action. (Doc. 1, pp. 7-8; Doc. 1-1, pp. 19-20). Smith falsely claimed that Plaintiff interrupted an investigation and was disrespectful. As a result, Plaintiff was moved to a restrictive area and then to L-Block. This punishment was much harsher than the typical outcome for a disciplinary ticket. Although Plaintiff contested the matter as retaliatory and offered witnesses who testified that Smith had not been truthful, Sgt. Shoeberg (a/k/a Shuberg)[1] refused to investigate the matter. Plaintiff alleges that the disciplinary record will negatively affect his classification in the future. Further, Shuberg/Shoeberg punished Plaintiff excessively by restricting his commissary beyond the date that the restriction should have been lifted. (Doc. 1, p. 8).

On February 1, 2018, hazardous fumes started pouring into Plaintiff's cellblock (L-

---

[1] Plaintiff spells this Defendant's name as "Shoeberg" in the body of the Complaint, but identifies him as "Shuberg" in his list of parties. (Doc. 1, p. 2).

5

Block) through the ventilation system. (Doc. 1, p. 8). C/O Taylor (not a Defendant) discovered that the fumes were coming from a box truck outside the building that had a bad exhaust leak. Taylor opened a door and placed a fan to remove the fumes from the block. Plaintiff wrote a complaint asking the supervisor (Botnak, or possibly Boujack)[2] to address the problem so it would not recur. However, nothing was done, and on February 8, 2018, the same thing happened. (Doc. 1, p. 9; Doc. 1-1, p. 2). This time, C/O Germain refused to open the door to bring in fresh air. Plaintiff yelled for a supervisor, but Germain and C/O Zante again refused to help. Another officer (Miller) finally opened the door. Again, on February 15, 2018, exhaust fumes began pouring in through the ventilation system. Plaintiff suffered headaches, dizziness, difficulty breathing, burning eyes, and stomach pains from the fumes. Supervisor John Doe #3 failed to remedy the situation despite Plaintiff's complaints. (Doc. 1-1, pp. 2-4). Plaintiff concludes that the "blatant disregard" of his complaints "seem[s] retaliatory in nature." (Doc. 1, p. 9).

On February 3, 2018, a mentally ill inmate was incorrectly placed on L-Block instead of on the wing where inmates with mental illnesses are normally housed. (Doc. 1, pp. 9-10). Plaintiff alerted C/O Kempt to the problem, but Kempt failed to respond or summon a supervisor. This inmate threatened other prisoners, talked of stabbing others or himself, and eventually a fight broke out where Plaintiff's hand was injured. Plaintiff submitted a captain complaint on February 9, 2018, when Sgt. Nichols was the supervisor on duty, but Nichols did nothing. Much later, on February 27, 2018, the mentally ill inmate was moved to the correct location. Plaintiff concludes that the officers who disregarded his concerns did so out of

---

[2] Plaintiff identifies this individual as "Botnak" in the body of the Complaint (Doc. 1, p. 9), however, he does not include Botnak as a Defendant. Plaintiff does, however, list "Sgt. Boujack" among the Defendants. It is possible that Plaintiff is referring to a single individual, but because this is not clear from the Complaint, Boujack shall be dismissed from the action without prejudice.

6

retaliation. (Doc. 1, p. 10).

Plaintiff seeks compensatory, punitive, and special damages for the violations of his rights. (Doc. 1, p. 11).

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.[3]

> **Count 1:** First Amendment retaliation claim against Supervisor John Doe #1, for transferring Plaintiff to J-Block in March 2016 in retaliation for Plaintiff's complaints about Jail conditions;
>
> **Count 2:** First Amendment retaliation claim against Robinson-Davis, for charging Plaintiff for food trays that were never delivered, after Plaintiff made complaints about the food service and/or filed a lawsuit against Robinson-Davis;
>
> **Count 3:** Fourteenth Amendment due process and conditions claims against Supervisor John Doe #2, for maintaining Plaintiff's placement in a locked-down cellblock (H-Block) where he was denied access to the law library, and denied hygiene items, cleaning supplies, and envelopes, when Plaintiff had committed no infraction;
>
> **Count 4:** First Amendment retaliation claim against Nichols for opening and reading Plaintiff's legal mail, after Plaintiff attempted to file case(s) in court while Plaintiff was housed on AB-Block;
>
> **Count 5:** First Amendment retaliation claim against Cook, for denying Plaintiff access to the law library, after Plaintiff attempted to file case(s) in court while Plaintiff was housed on AB-Block;
>
> **Count 6:** First Amendment retaliation claim against Masse, for delaying Plaintiff's outgoing and incoming legal mail in November 2017, in an attempt to

---

[3] In particular, Plaintiff's claim over November 2016 commissary charges is dismissed without prejudice, as Plaintiff did not associate this claim with any of the named Defendants. (Doc. 1, p. 6).

interfere with Plaintiff's pending lawsuit;

**Count 7:** First Amendment retaliation claim and deliberate indifference to medical needs claim against Masse, for preventing Plaintiff from speaking to a nurse about his medical issues on November 7, 2017;

**Count 8:** First Amendment retaliation claim against Smith for bringing a false disciplinary charge on January 25, 2018, and against Shuberg/Shoeburg for refusing to investigate the false charge and imposing excessive discipline, after Plaintiff sued Smith;

**Count 9:** Fourteenth Amendment deliberate indifference claim against Germain, Zante, and John Doe #3, for repeatedly exposing Plaintiff to harmful exhaust fumes in February 2018;

**Count 10:** Fourteenth Amendment deliberate indifference claim, and First Amendment retaliation claim, against Kempt and Nichols for allowing a mentally ill inmate to remain improperly housed in L-Block in February 2018, resulting in injury to Plaintiff.

**Dismissal of Defendants Not Associated with Claims**

Plaintiff names Defendants Boujack[4] and St. Clair County in the caption of his Complaint, but he fails to mention them in the statement of claim. The Court is thus unable to ascertain what claims, if any, Plaintiff has against these Defendants. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, Defendants Boujack and St. Clair County will be dismissed from this action without prejudice.

---

[4] Plaintiff's references to "Botnak" (Doc. 1, pp. 8-9) may or may not be an attempt to assert a claim against Boujack. The names are too dissimilar for the Court to presume that Plaintiff is referring to the same individual.

Further, Plaintiff shall note that in order to obtain relief against a municipality such as St. Clair County, a plaintiff must allege that the constitutional deprivations were the result of an official policy, custom, or practice of the municipality. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006). In this case, Plaintiff makes no allegations at all against St. Clair County, much less a claim that the retaliation and other alleged violations were caused by any official policy, practice, or custom promulgated by the County.

## Severance of Claims & Defendants

As part of the screening process, the Court must assess whether the claims against the various parties may properly proceed together in the same action, in consideration of Federal Rule of Civil Procedure 20. Under Rule 20(a)(2),[5] a "plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017); FED. R. CIV. P. 20(a)(2). The Seventh Circuit instructs that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b), (g)). Severance of unrelated claims is encouraged, and the Seventh Circuit has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee

---

[5] Rule 20, which governs joinder of parties in a single action, must be satisfied before the Court turns to the question of whether claims are properly joined under Rule 18. *Intercon Research Assoc's, Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 57 (7th Cir. 1982); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civil 3d § 1655 (West 2017). Rule 18 allows a plaintiff to join in one action as many claims as it has against an opposing party.

requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, improperly joined parties and/or claims shall be severed into new cases, given new case numbers, and assessed separate filing fees.

Each of the claims in Counts 1-10 arose from distinct incidents, which occurred at various times over a nearly 2-year period. While Plaintiff makes a general reference to the Defendants' actions amounting to a "campaign [of] harassment" (Doc, 1, p. 4), he includes no factual allegations to support the notion that the various Defendants acted in concert to violate his rights. There is thus no basis to conclude that the various incidents in Counts 1-10 were part of the same transaction/occurrence or series of transactions/occurrences. Under Rule 20, each of these distinct claims belongs in a separate lawsuit. Applying Federal Rule of Civil Procedure 18, however, Counts 5 and 6 may proceed together in a single action because both are against Masse. Likewise, Count 10 against Kempt and Nichols may be combined with Count 4 against Nichols.

Count 1 against Supervisor John Doe #1 shall remain in this original action. Plaintiff's other claims shall be severed into 7 separate cases, as follows:

**First severed case:** Count 2 against Robinson-Davis.

**Second severed case:** Count 3 against John Doe #2.

**Third severed case:** Count 5 against Cook.

**Fourth severed case:** Counts 6 and 7 against Masse.

**Fifth severed case:** Count 8 against Smith and Shuberg/ Shoeburg.

**Sixth severed case:** Count 9 against Germain, Zante, and John Doe #3.

**Seventh severed case:** Count 4 against Nichols and Count 10 against Kempt and Nichols.

After the above 7 new cases are opened, given case numbers, and assigned to a Judge, the Court shall conduct the required merits review pursuant to 28 U.S.C. § 1915A on those severed claims. Plaintiff shall be assessed a new filing fee for each severed case.

The merits of Count 1 shall be addressed below.

### Count 1 – Retaliation – Supervisor John Doe #1

Plaintiff alleges that in March 2016, he was moved to a different wing of the Jail (J-Block), not long after he had submitted a series of complaints about unwashed blankets, and maggots in the Jail food. On J-Block, Plaintiff faced safety risks from other inmates, was allegedly denied medical and dental treatment, and was unable to access the law library as he had on his previous cellblock. (Doc. 1, p. 5). Furthermore, he had been led to believe that he was being released, not re-housed, and gave away valuable property items because of that misinformation.

Jail and prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation

may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Plaintiff points to several aspects of the transfer to J-Block that adversely affected him. The timing of the transfer plausibly suggests that John Doe #1 may have been motivated by a desire to retaliate against Plaintiff for raising complaints. Plaintiff notes that he had not been involved in any disciplinary issues that could have caused him to be transferred. At this early stage of the lawsuit, the retaliation claim in **Count 1** survives review under § 1915A. However, before service of the Complaint can be made on the John Doe #1 Supervisor, Plaintiff must identify this individual by name.

Where a prisoner's complaint states specific allegations describing conduct of individual jail staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In order to allow Plaintiff to pursue such discovery, the Clerk shall be directed to add the Sheriff of St. Clair County as a Defendant in this action, in his official capacity only. The Sheriff shall then be responsible for responding to discovery aimed at identifying the unknown Defendant. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of the Supervisor John Doe #1 is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

**Pending Motion**

Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) shall be addressed in a separate order, after the Clerk receives Plaintiff's inmate trust fund statement. (*See* Doc. 4).

## Disposition

Defendants **BOUJACK** and **ST. CLAIR COUNTY** are **DISMISSED** from this action without prejudice.

The Clerk is **DIRECTED** to add the **ST. CLAIR COUNTY SHERIFF (Official Capacity Only)** as a Defendant.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 20(a)(2), Plaintiff's claims in **COUNTS 2-10** are severed into 7 new cases as follows:

**First Severed Case:** **Count 2** against Robinson-Davis for retaliating against Plaintiff by charging him for food trays that were never delivered;

**Second Severed Case:** **Count 3** against Supervisor John Doe #2, for keeping Plaintiff in a locked-down cellblock under unconstitutional conditions and denying him due process;

**Third Severed Case:** **Count 5** against Cook, for retaliating against Plaintiff by denying him law library access;

**Fourth Severed Case:** **Counts 6 and 7** against Masse, for retaliating against Plaintiff by delaying his legal mail (Count 6), and for retaliation and deliberate indifference to medical needs (Count 7);

**Fifth Severed Case:** **Count 8** against Smith and Shuberg/Shoeberg for retaliating against Plaintiff with a false disciplinary charge and excessive punishment;

**Sixth Severed Case:** **Count 9** against Germain, Zante, and Supervisor John Doe #3 for exposing Plaintiff to exhaust fumes;

**Seventh Severed Case:** **Count 4** against Nichols for retaliating against Plaintiff by opening his legal mail, and **Count 10** against Kempt and Nichols for deliberate indifference and retaliation by housing Plaintiff with a mentally ill prisoner.

In each new case, the Clerk is **DIRECTED** to file the following documents:

(1)  This Memorandum and Order

(2)  The Original Complaint (Doc. 1) and Exhibits (Doc. 1-1)

(3)  Plaintiff's motion to proceed *in forma pauperis* ("IFP") (Doc. 2)

(4) Plaintiff's prisoner trust fund account statement (Doc. 6)

Plaintiff **will be responsible for an additional $350.00[6] filing fee** in each new case. No service shall be ordered on the Defendants in the severed cases until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 1 against Defendant JOHN DOE #1 (Supervisor) and the ST. CLAIR COUNTY SHERIFF (Official Capacity)*, for retaliation. This case shall now be captioned as: **ANTRELL TEEN, Plaintiff, vs. JOHN DOE #1 (Supervisor), and ST. CLAIR COUNTY SHERIFF (Official Capacity Only), Defendants.**

**IT IS FURTHER ORDERED** that Defendants **SMITH, GERMAINE, ZANTE, KEMPT, ROBINSON-DAVIS, SHUBERG/SHOEBERG, NICHOLS, COOK, MASSE, and JOHN DOES #2 and #3 (Supervisors)** are **TERMINATED** from *this* action with prejudice.

As to **COUNT 1**, which remains in the instant case, **t**he Clerk of Court shall prepare for Defendant **ST. CLAIR COUNTY SHERIFF (Official Capacity Only)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

---

[6] The filing fee is $350.00 for a plaintiff who is granted leave to proceed *in forma pauperis* ("IFP"). If IFP status is denied, the filing fee is $400.00, which includes a $50.00 administrative fee assessed in non-IFP civil cases. See Judicial Conference Schedule of Fees - District Court Miscellaneous Fee Schedule, 28 U.S.C. § 1914, No. 14.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Service shall not be made on Defendant **JOHN DOE #1 (Supervisor)** until such time as Plaintiff has identified this individual by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a plan for discovery aimed at identifying the unknown Defendant with particularity.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 18, 2018**

s/J. Phil Gilbert<br>
United States District Judge